# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF OKLAHOMA

IN RE:                                          )
                                                )
Jeffery G. Dailey                               )         Case No.  25-80078-PRT
                                                )         Chapter 7
          Debtor.                               )

## CHERI DAILEY'S TRIAL BRIEF ON HER OBJECTION TO TRUSTEE'S FIRST AMENDED EMERGENCY MOTION TO SUBSTANTIVELY CONSOLIDATE BOREWORXX CONSTRUCTION, LLC

COMES NOW Cheri Dailey, by and through Ron Brown of Brown Law Firm PLLC, and respectfully provides this trial brief in support of her objection asking this Court to  deny the Trustee's First Amended Emergency Motion to Substantively Consolidate Boreworxx Construction, LLC (the "Amended Motion to Consolidate"). In support thereof, Ms. Dailey states as follows:

### BRIEF IN SUPPORT

### STATEMENT OF JURISDICTION

This matter is a core proceeding under 28 USC § 157. Therefore, this Court has jurisdiction to hear and enter judgment on this matter under 28 U.S.C. § 1334. Venue is proper in the United States Bankruptcy Court for the Eastern District of Oklahoma pursuant to 28 U.S.C. §§ 1408 and 1409.

### STATEMENT OF FACTS

1. Boreworxx Construction LLC ("Boreworxx Construction") was organized as a New Mexico limited liability company on July 25, 2024.[1]

2. Boreworxx Construction registered its primary place of business at 2700 Pepsi Way Aztec, New Mexico 87410.[2]

3. Cheri Dailey was named as the sole member of Boreworxx Construction.[3]

---

[1] Limited Liability Company Agreement of BOREWORXX CONSTRUCTION LLC A Single Member Limited Liability Company ("Boreworxx Construction Operating Agreement"), <u>Exhibit 223</u> p. 1.
[2] *Id.*
[3] *Id.* at p. 2.

4. The Boreworxx Construction Operating Agreement provided that the "Agreement may be amended only by written consent of the Member," and that Boreworxx Construction would prepare, execute, and file a Certificate of Amendment.[4]

5. The Boreworxx Construction Operating Agreement further provided that the "Agreement contains the entire understanding among the parties. . . and supersedes all prior and contemporaneous agreements and understandings."[5]

6. On July 30, 2024, Boreworxx Construction filed its Articles of Organization with the State of New Mexico, naming Cheri Dailey as registered agent and organizer of Boreworxx Construction.[6]

7. In August of 2024, Boreworxx Construction entered into a service contract with Bonfire.[7]

8. The Bonfire deal served as a basis for financing via Oxford Financial and Commercial Capital.[8]

9. In September of 2024, Mitchell Rice of Commercial Capital travelled to meet Jeff Dailey and Cheri Dailey for the signing of loan documents and printed them at a UPS store before he arrived.[9]

10. At this meeting, Mr. Rice discovered that the documents Commercial Capital had prepared mistakenly listed Jeff Dailey as a member of Boreworxx Construction.[10]

11. Due to the circumstances, Cheri gave Jeff a limited agency to sign the documents with Commercial Capital.[11]

12. Even though Mr. Rice was alerted to the error in the documents, the same error was repeated several times, requiring Cheri Dailey to continue to permit Jeff Dailey to exercise a limited agency.[12]

---

[4] *Id.* at p. 7.
[5] *Id.* at p. 8.
[6] Boreworxx Construction LLC Operating Agreement, Exhibit 223 pp. 2-3
[7] *See* customer contracts, Exhibit 227 pp. 31-51.
[8] Exhibit 214, pages 68-264 (hereinafter referred to as "Mitchell A. Rice Deposition). Mitchell A. Rice Deposition 44:4-10; 67:6-9; 74:9-12; 115:22-25,
[9] Mitchell A. Rice Deposition 35:14-15,
[10] Mitchell A. Rice Deposition 52:20-23; 53:1-4; 63:8-12; 84:6-10; 88:12-18; 89:24-25 to 90:1-2; 99:4-10,
[11] Mitchell A. Rice Deposition 54:1-4,
[12] Mitchell A. Rice Deposition 88:12-18,

13. At some point between March 2025 and July 2025, internal review led Commercial Capital to correct the erroneous listing of Jeff Dailey as a member of Boreworxx Construction and give him his proper title of Operations Manager.[13]

14. To the extent that Jeff Dailey and/or Tycoon Motorsports served as guarantors at the outset of the relationship between Boreworxx Construction and Commercial Capital, Mr. Rice testified that those guarantees were voluntarily released by Commercial Capital when internal records were updated.[14]

15. After the forming of Boreworxx Construction, securing the company's first project, and obtaining financing, Cheri Dailey then began to prepare to relocate from Oklahoma to New Mexico to be closer to family.

16. While Cheri ran the administrative side of Boreworxx Construction from Oklahoma, Jeff served as an on-site manager while the Bonfire work began.

17. In order to allow prompt payment of subcontractor invoices, Cheri wrote checks for Jeff to cash to be able to pay on the jobs as they were completed.

18. At times, Cheri paid on outstanding liabilities of Jeff Dailey in lieu of wages.

19. On February 14, 2025, the date that Jeff Dailey filed for bankruptcy, Cheri Dailey remained the sole member of Boreworxx Construction.

20. In May of 2025, the Trustee began to issue subpoenas duces tecum to financial institutions that Boreworxx Construction used for banking services.[15]

21. In May of 2025, the Trustee filed his original Motion to Consolidate relating to Boreworxx Construction.[16]

---

[13] Mitchell A. Rice Deposition 94:12-17,

[14] Mitchell A. Rice Deposition 95:10 to 96:25,

[15] *See* Subpoena to Four Corners Community Bank at Docket 126; Subpoena of Vermeer Mountain West, Inc at Docket 158; Subpoena of Four Corners Community Bank at Docket 159; Subpoena of First National Bank of Ardmore, DBA 1NB at Docket 162; Subpoena of Texas Heritage National Bank at Docket 163; Subpoena of First Texoma National Bank at Docket 166; Subpoena to Payne County Bank at Docket 167; Subpoena to The Hardin County Bank at Docket 176.

[16] Motion to Consolidate Lead Case 25-80078 with Boreworxx Construction LLC, Exhibit 201.

Case 25-80078   Doc 895   Filed 06/08/26   Entered 06/08/26 23:38:03   Desc Main
Document   Page 3 of 20

22. In June of 2025, the Court issued an Order allowing the consolidation.[17]

23. After obtaining the order, the Trustee issued further subpoenas and took steps to interrupt the day-to-day operations of Boreworxx Construction.[18]

24. The Trustee's actions caused a loss of work for Boreworxx Construction, resulting in an inability to make payments to creditors.

25. Boreworxx Construction is owed in excess of $2,000,000.00 for work already performed that clients have refused to pay because of the consolidation.

26. Cheri Dailey is the sole member of Sevyn Miles LLC.[19]

27. Jeff and Cheri Dailey are not a married couple.

28. Jeff Dailey currently resides in Colorado.

29. Cheri Dailey currently resides in New Mexico.


## PROCEDURAL HISTORY

1. Jeff Dailey ("Debtor") filed for Chapter 7 bankruptcy on February 14, 2025. (DE # 1).

2. On May 15, 2025, the Trustee filed several motions to consolidate. (DE # 133, 135, 137, 139, 148).

3. Four of the Trustee's motions to consolidate were for businesses of the Debtor. (DE # 133, 135, 137, 148).

4. One of the Trustee's motions to consolidate, the Motion to Consolidate Lead Case 25-80078 with Boreworxx Construction, LLC ("Motion to Consolidate Boreworxx Construction"), asks the Court

---

[17] Agreed Order on Motion to Substantively Consolidate Boreworxx Construction LLC, Exhibit 205.

[18] Subpoena to United Electric, Inc. at Docket 172; Subpoena to Bonfire Fiber LLC at Docket 175; Subpoena to Gigapower, LLC at Docket 205; Subpoena to Comcast Cable Communications, LLC at Docket 206; Subpoena to Ezee Fiber Texas, LLC at Docket 207; Subpoena toVexus Fiber, LLC at Docket 208: Subpoena to Ripple Fiber, Inc. at Docket 209; Subpoena to Circet USA at Docket 248; Subpoena to San Juan County Abstract & Title Co. at Docket 286; Subpoena to Hughes Gas System, LLC at Docket 288; Subpoena to Town of Igancio at Docket 503; and so forth.

[19] Sevyn Miles LLC Certificate and Articles of Organization, Exhibit 224; Sevyn Miles LLC LLC Operating Agreement, Exhibit 225.

Case 25-80078   Doc 895   Filed 06/08/26   Entered 06/08/26 23:38:03   Desc Main
Document   Page 4 of 20

to grant substantive consolidation of a non-debtor entity, Boreworxx Construction LLC, which is 100% owned by Cheri Dailey, with the Debtor's bankruptcy estate. (DE # 139).

5. The Trustee attested that he sent notice of his Motion to Consolidate Boreworxx Construction to all parties entitled to receive notice. (DE # 139).

6. On June 9, 2025, the Court entered an Agreed Order Approving Substantive Consolidation of Boreworxx Construction LLC, and Resolving Security State Bank's Limited Objection ("Agreed Order"). The order was considered an "agreed order" because the Trustee failed to serve creditors. Interested parties did not object because they were unaware of the proceeding. (DE # 201).

7. On August 13 and 14, 2025, having just discovered that Boreworxx Construction LLC had been consolidated with the Debtor's bankruptcy estate, Cheri Dailey filed a Motion to Vacate the Agreed Order Approving Substantive Consolidation of Boreworxx Construction LLC ("Motion to Vacate") (DE # 346) with a Brief in Support (DE # 351). In her Motion to Vacate, Ms. Dailey asserts that the Trustee's notice of his Motion to Consolidate was defective; neither Ms. Dailey nor Boreworxx Construction's creditors received notice that the Trustee intended to consolidate the business with the Debtor's bankruptcy estate.

8. On August 17, 2025, the Court set a hearing on Ms. Dailey's Motion to Vacate for October 15, 2025. (DE # 359).

9. On August 26, 2025, Commercial Capital Company ("Commercial Capital") filed a Joinder to Ms. Dailey's Motion to Vacate. (DE # 388). In its Joinder, Commercial Capital asks the Court to vacate the Agreed Order "[f]or the reasons set forth by Cheri Dailey." Commercial Capital also asks the Court to set aside the Agreed Order because the Trustee never sent notice to Commercial Capital regarding the Trustee's Motion to Consolidate Boreworxx Construction and the Agreed Order.

10. On August 26, 2025, Oxford Financial Services LLC ("Oxford") filed a Joinder to Ms. Dailey's Motion to Vacate. (DE # 389). In its Joinder, Oxford asks the Court to vacate the Agreed Order "[f]or the reasons set forth by Cheri Dailey." Oxford also asks the Court to set aside the Agreed

Order because the Trustee never sent notice to Commercial Capital regarding the Trustee's Motion to Consolidate Boreworxx Construction and the Agreed Order.

11. On September 12, 2025, the Trustee filed an Objection to Ms. Dailey's Motion to Vacate. (DE # 447).

12. On September 12, 2025, the Trustee filed a Corrected Objection to the Motion to Vacate. (DE # 451).

13. On September 15, 2025, the Trustee asked the Court to continue the hearing on the Motion to Vacate. (DE # 462).

14. On September 19, 2025, the Court continued the hearing on Ms. Dailey's Motion to Vacate to November 12, 2025. In its Order, the Court continued the matter as a preliminary hearing. (DE # 481).

15. On November 12, 2025, a preliminary hearing was held on the Motion to Vacate. The Court scheduled an evidentiary hearing for January 21, 2026. (DE # 599).

16. On December 31, 2025, the Court scheduled a Telephonic Status Conference for January 5, 2026, regarding the Agreed Order, the Motion to Vacate the Agreed Order, Joinders by both Commercial Capital and Oxford, and the Trustee's Objection to Motion to Vacate. (DE # 654).

17. On January 5, 2026, the Court held a Telephonic Status Conference, at which the Court ordered Cheri Dailey to provide a list of Boreworxx Construction LLC's creditors to the Trustee by 1/15/2026, and ordered that the Agreed Order will remain in effect until the Court orders otherwise. (DE # 656). During the status conference, the Court criticized the Order on Trustee's Motion to Consolidate Boreworxx Construction LLC as "fatally flawed" for failure to serve notice on Borewroxx Construction's creditors.[20] The Court suggested that the Trustee file an amended motion to consolidate Boreworxx Construction to remedy the defective notice and provide for

---

[20] Tr. of Proc. 19:1-2, 21:19-2, January 5, 2026. Exhibit 213.

Case 25-80078   Doc 895   Filed 06/08/26   Entered 06/08/26 23:38:03   Desc Main
Document    Page 6 of 20

injunctive relief at the same time.[21] The Trustee's counsel represented that an amended motion would be filed within approximately 21 days from the hearing.[22]

18. On March 27, 2026, the Trustee finally filed Trustee's First Amended Emergency Motion to Substantively Consolidate Boreworxx Construction, LLC ("Amended Motion to Consolidate"). (DE # 743).  See Exhibit 214.

19. On March 27, 2026, the Trustee also filed an Application to Expedite Hearing regarding his Amended Emergency Motion. (DE # 744).

20. On March 31, 2026, the Court set the Amended Motion to Consolidate for hearing on April 15, 2026. (DE # 750).

21. On April 3, 2026, Ms. Dailey filed an Emergency Application to Continue Hearing or, Alternatively, to Direct That April 15, 2026 Hearing Be Held as a Preliminary Hearing, and/or to Reconsider April 2, 2026 Minute Entry. (DE # 758).

22. On April 6, 2026, the Trustee filed Motion to Compromise Under Rule 9019 with Commercial Capital Company, LLC and Oxford Financial Services, LLC ("Motion to Compromise with Commercial Capital and Oxford"). (DE # 760). It is apparent in the proposed settlement agreement between the Trustee, Commercial Capital, and Oxford that the Trustee offered to fully allow the proofs of claim of Commercial Capital and Oxford in exchange for their support of the Trustee's Amended Emergency Motion. The Trustee offered this despite Oxford's status as a general unsecured creditor of Boreworxx Construction[23] and Commercial Capital's status as a partially secured creditors.[24]

---

[21] *Id* at 28:19-25, 29:1-3.  (The amended motion at Docket 214 does not ask for injunctive relief.)
[22] *Id* at 37:4-8.
[23] Proof of Claim 65-1 filed by Oxford Financial, <u>Exhibit 220.</u>
[24] Proof of Claim 83-1 filed by Commercial Capital Company, <u>Exhibit 219</u>.

Case 25-80078   Doc 895   Filed 06/08/26   Entered 06/08/26 23:38:03   Desc Main
Document    Page 7 of 20

23. On April 8, 2026, Ms. Dailey filed an Emergency Application to Continue Hearing On the Amended Emergency Motion to Consolidate and the Motion to Compromise with Commercial Capital and Oxford. (DE # 764).

24. On April 8, 2026, the Court entered an Order Resetting Hearing on Trustee's First Amended Consolidation Motion Regarding Boreworxx Construction, LLC as a Preliminary Hearing. (DE # 765).

25. On April 10, 2026, Ms. Dailey filed her Objection to the Trustee's First Amended Motion for Substantive Consolidation of Boreworxx Construction, LLC ("Objection to Amended Motion to Consolidate"). (DE # 775).

26. On April 15, 2026, a Preliminary Hearing was held regarding the Amended Motion to Consolidate and Objection to Amended Motion to Consolidate.

27. On April 16, 2026, the Court entered a minute entry scheduling an evidentiary hearing on the Amended Motion to Consolidate and Objection to Amended Motion to Consolidate for 6/12/2026 at 9:00 AM.

## SUMMARY OF THE ARGUMENT

The Trustee asks this Court to grant his Motion to substantively consolidate a nondebtor entity with the bankruptcy estate. The Court should deny this Motion for two primary reasons: (1) the Trustee has failed to meet the standards set forth by Oklahoma bankruptcy courts for substantively consolidating a non-debtor entity; and (2) the Trustee has failed to request consolidation by adversary proceeding. For these reasons, this Court should deny the Trustee's Amended Motion to Consolidate.

## ARGUMENT

**I. The Trustee's motion to substantively consolidate Boreworxx Construction should be denied because the Trustee cannot satisfy the standards for substantive consolidation set forth by Oklahoma bankruptcy courts.**

Case 25-80078   Doc 895   Filed 06/08/26   Entered 06/08/26 23:38:03   Desc Main
Document   Page 8 of 20

The Trustee cannot meet the standards for substantive consolidation prescribed by Oklahoma's bankruptcy courts.

Substantive consolidation is a judge-made procedure.[25] The Bankruptcy Code does not define substantive consolidation, nor does it specify a standard that a trustee must meet before the court may grant an order substantively consolidating an entity with the bankruptcy estate.[26] Rather, bankruptcy trustees derive their power to substantively consolidate entities from their general equitable powers as set forth in 11 U.S.C.S. § 105(a).[27] It should be noted that a trustee cannot use the general powers emanating from § 105 as an unconditional permit to drag nondebtors into bankruptcy:

> [Section] 105 only gives bankruptcy courts the power to do what is necessary or appropriate to accomplish the goals of the Bankruptcy Code. The section does not give bankruptcy courts unfettered power. Bankruptcy courts cannot and should not simply drag unwilling entities that never chose to file bankruptcy into a bankruptcy forum simply because it is expedient and will help one party or another.[28]

Because substantive consolidation is not written into the Bankruptcy Code, yet the procedure implicates the rights of interested parties and creditors, courts universally agree that substantive consolidation should be used "sparingly," "in very limited circumstances," and as a "last resort after considering and rejecting other remedies."[29] Employing substantive consolidation for the benefit of "some creditors" or for mere "administrative benefit . . . falls far short" of establishing grounds to use this form of "rough justice."[30]

What, then, must a trustee prove in order for a court to grant him substantive consolidation powers? Several standards for substantive consolidation have emerged among the circuits. The 10th Circuit has not

---

[25] In re Horsley, 2001 Bankr. LEXIS 1156, *9.

[26] Helena Chem. Co. v. Circle Land & Cattle Corp. (In re Circle Land & Cattle Corp.), 213 B.R. 870, 875.

[27] In re Hutco Inc., 2003 Bankr. LEXIS 1889, *6; 11 USC § 105(a) ("The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.")

[28] In re Pearlman, 462 B.R. 849, 854.

[29] SE Prop. Holdings, LLC v. Stewart (In re Stewart), 571 B.R. 460, 471; In re Owens Corning, 419 F.3d 195, 211.

[30] In re Owens Corning, 419 F.3d 195, 211, 214.

Case 25-80078   Doc 895   Filed 06/08/26   Entered 06/08/26 23:38:03   Desc Main
Document     Page 9 of 20

adopted a particular test. It is therefore appropriate to review the two most cited tests among the circuits:

the *Auto-Train* test and the *Owens Corning* test.

The *Auto-Train* test was developed in 1987 and states as follows:

> The proponent must show not only a substantial identity between the entities to be consolidated, but also that consolidation is necessary to avoid some harm or to realize some benefit.[31]

In 2005, the 3rd Circuit criticized *Auto-Train* test for "allow[ing] a threshold not sufficiently egregious and too imprecise" for the "extreme" remedy of substantive consolidation.[32] The *Owens Corning* court then set forth the following test to be used in the 3rd Circuit:

> In our Court what must be proven (absent consent) concerning the entities for whom substantive consolidation is sought is that (i) prepetition they disregarded separateness so significantly their creditors relied on the breakdown of entity borders and treated them as one legal entity, or (ii) postpetition their assets and liabilities are so scrambled that separating them is prohibitive and hurts all creditors.[33]

In 2017, the Bankruptcy Court for the Western District of Oklahoma stated that the 10th Circuit most often cites the *Owens Corning* test in substantive consolidation cases.[34]

Because neither *Auto-Train* nor *Owens Corning* has been officially adopted by Oklahoma's bankruptcy courts, analysis under both tests is appropriate. Applying either test to the facts of this case yields the same result: Boreworxx Construction should not be substantively consolidated with the bankruptcy estate.

A. Substantive consolidation is not warranted under the *Auto-Train* test.

The Trustee cannot prove that substantive consolidation is appropriate under the *Auto-Train* test. The *Auto-Train* test requires the movant to show (1) substantial identity between the entities to be consolidated and (2) consolidation is necessary to avoid some harm or to realize some benefit.

---

[31] Drabkin v. Midland-Ross Corp. (In re Auto-Train Corp.), 810 F.2d 270, 276.
[32] In re Owens Corning, 419 F.3d 195, 210.
[33] In re Owens Corning, 419 F.3d 195, 210.
[34] SE Prop. Holdings, LLC v. Stewart (In re Stewart), 571 B.R. 460, 469.

Case 25-80078   Doc 895   Filed 06/08/26   Entered 06/08/26 23:38:03   Desc Main
Document     Page 10 of 20

**1. There is no substantial identity between Jeff Dailey and Boreworxx Construction.**

First, there is no substantial identity between Jeff Dailey and Boreworxx Construction. Jeff Dailey is not a member of Boreworxx Construction.[35] Jeff Dailey is not named on any of Boreworxx Construction's founding documents.[36] Jeff Dailey is a managerial employee of Boreworxx Construction, but not a formal officer and he holds no ownership rights in the business. Boreworxx Construction's creditors did not perceive Jeff Dailey to be a member of Boreworxx Construction, despite the Trustee's allegations to the contrary.

In his argument for consolidation, the Trustee paints a false picture of Jeff Dailey as the owner of Boreworxx Construction. The Trustee predicates his alter ego argument on three primary assertions: (1) Jeff Dailey signed agreements between Boreworxx Construction and Commercial Capital as a "member" or "operating manager" of Boreworxx Construction; (2) Jeff Dailey refinanced his operations by transferring assets and debts from Tycoon Motorsports to Boreworxx Construction; and (3) Boreworxx Construction's material creditors relied on the lack of separateness between Borewroxx Construction and Jeff Dailey when making lending decisions.[37] Each of these assertions is misinformed and false.

Regarding the Commercial Capital-Boreworx Construction agreements signed by Jeff Dailey, the record is abundantly clear that Commercial Capital mistakenly named Jeff Dailey as a member of Boreworxx Construction.[38] Commercial Capital CEO Mitch Rice testified that he understood that Jeff Dailey was not a member of Boreworxx Construction, and that Cheri Dailey was the owner of Boreworxx Construction, at the time of executing agreements between the parties.[39] Despite Mr. Rice's numerous clarifications that naming Jeff Dailey as a member of Boreworxx Construction was a clerical error, the

---

[35] Boreworxx Construction's Articles of Organization, Exhibit 222 pp. 2-3; Designation of Registered Agent, Exhibit 223 p. 4; Operating Agreement, Exhibit 223.

[36] *Id.*

[37] Trustee's First Amended Emergency Motion to Substantively Consolidate Boreworxx Construction LLC at Docket 743. Exhibit 214.

[38] Mitchell A. Rice Deposition 52:20-23; 53:1-4; 63:8-12; 84:6-10; 88:12-18; 89:24-25 to 90:1-2; 99:4-10,

[39] Mitchell A. Rice Deposition 51:12-14, 51:23; 192:15-20; 193:10-14,

Case 25-80078   Doc 895   Filed 06/08/26   Entered 06/08/26 23:38:03   Desc Main Document    Page 11 of 20

Trustee only admits this crucial fact once in his argument.[40] The Trustee buries this disclaimer within a series of paragraphs wherein he recites every Commercial Capital-Boreworxx Construction agreement that Jeff Dailey signed. The Trustee's recitation of these Commercial Capital-Boreworxx Construction documents are a red herring meant to pull the Court's attention to "facts" which are invalidated by Mitch Rice's repeated admissions that Jeff Dailey should not have been listed as a member. Mitchell A. Rice testified that the original Master Agreement was created, incorrectly, but his company and all other documents followed with incorrect ownership information because the first one was created incorrectly.

Next, the Trustee's assertion that Jeff Dailey refinanced his operations by transferring Tycoon Motorsports assets and debt to Boreworxx Construction is misguided. This is what actually happened: Tycoon Motorsports had an existing line of credit with Commercial Capital. Tycoon Motorsports started to fail, and Jeff Dailey began defaulting on the Tycoon-Commercial Capital loans. As Tycoon Motorsports fell into default, it became apparent to Commercial Capital that it needed to find an alternative avenue for repayment. Meanwhile, Cheri Dailey was starting her own business, Boreworxx Construction, and she needed to find financing. This created a perfect business opportunity for all three parties. Boreworxx Construction assumed the Tycoon-Commercial Capital debts, along with the attached collateral (which Cheri Dailey later substituted for alternative collateral better suited for her construction business). Under this arrangement, Jeff Dailey's obligation on the Tycoon-Commercial Capital loans was terminated, Cheri Dailey assumed a significant line of credit for her new business, and Commercial Capital secured an avenue outside of Jeff Dailey for repayment on the loans. This was a business decision made by all three parties for the benefit of all three parties.

This transaction was not a scheme for Jeff Dailey to refinance his operations under the guise of a new business. Rather, it was a sale of equipment from one entity (Tycoon Motorsports) to a new entity (Boreworxx Construction) with the transfer of assets financed by a creditor (Commercial Capital). It was not a scheme at all, it was carried out exactly how it legally should have been.

---

[40] Trustee's First Amended Emergency Motion to Substantively Consolidate Boreworxx Construction, LLC with Brief in Support, p. 10 ¶ 37, at Docket 743.

Case 25-80078   Doc 895   Filed 06/08/26   Entered 06/08/26 23:38:03   Desc Main
Document    Page 12 of 20

Lastly, the Trustee's assertion that Boreworxx Construction's material creditors relied on the lack of separateness between Jeff Dailey and Boreworxx Construction is a mischaracterization of the facts. Although it is true that Commercial Capital considered Jeff Dailey's prior payment history when deciding whether to lend to Boreworxx Construction,[41] this was one of many factors Commercial Capital considered in making that decision, and it certainly was not dispositive. Mitch Rice's deposition testimony makes it clear that Commercial Capital was confronted with a choice to either cut its losses in regards to the Tycoon-Commercial Capital loans, or to find someone else to assume those loans and possibly get paid back.[42] Presumably Commercial Capital would have allowed any borrower to assume the Tycoon-Commercial Capital debts, so long as there was even a marginal chance of recovery, because any recovery is better than no recovery. Additionally, Commercial Capital believed that Boreworxx Construction had strong potential to pay back the loans, given the business's lucrative deal with Bonfire.[43] In this regard, Commercial Capital actually did the opposite of what the Trustee alleges—Commercial Capital relied on the separateness of Jeff Dailey, whose business was a sinking ship, and Boreworxx Construction, which was proving itself to be a strong new business with great repayment potential.

In sum, the Trustee has failed to prove substantial identity between Boreworxx Construction and Jeff Dailey.

### 2. Consolidation is not necessary to avoid some harm or to realize some benefit.

In this case, consolidation is not necessary to avoid some harm or to realize some benefit. In fact, consolidation has already caused severe harm to Boreworxx Construction's owner and its creditors, and will continue to cause severe harm if this Court consolidates the entity with the bankruptcy estate. Boreworxx Contruction had a profitable business contract with a vendor, Bonfire[44], until the Trustee obtained an order of consolidation without providing notice to Ms. Dailey for Boreworxx Construction

---

[41] Mitchell A. Rice Deposition 43:7-20.
[42] Mitchell A. Rice Deposition 42:8-15; 44:4-24; 67:9-13.
[43] Mitchell A. Rice Deposition 44:4-10; 67:6-9; 74:9-12; 115:22-25.
[44] See Exhibit 227, pp. 31-51.

Case 25-80078    Doc 895    Filed 06/08/26    Entered 06/08/26 23:38:03    Desc Main
Document    Page 13 of 20

creditors. Then, instead of seeking injunctive relief to protect the assets from dissipation, the Trustee confiscated most all of Boreworxx Construction's assets knowing the only basis to do so was a "fatally flawed" order in hand. The Court should not permit consolidation if it harms even one creditor, including creditors of "those to be forcibly made debtors."[45]

Boreworxx Construction's creditors will be harmed if this Court consolidates Boreworrx Construction with the bankruptcy estate. Prior to Jeff Dailey's bankruptcy, Boreworxx Construction had secured several lucrative deals, including projects with Bonfire, the Town of Ignacio, and Circet USA.[46] Boreworxx Construction was solvent, and its creditors were therefore in a strong position to be paid back in full. The Trustee's actions in this bankruptcy case have destroyed this prospect. By seizing Boreworxx Construction's assets, the Trustee made it impossible for Boreworxx Construction to continue its operations, causing the business to lose its deals with Bonfire, the Town of Ignacio, and Circet. The Trustee has effectively driven Boreworxx Construction into the ground. The harm to creditors is clear: Whereas Boreworxx Construction's creditors could have been paid back in full if Boreworxx Construction had never been consolidated with the bankruptcy estate, Boreworxx Construction's creditors will now receive pennies on the dollar for their claims. The Northern District of Oklahoma explained the harm to creditors in this scenario as follows:

> Put another way, if a solvent debtor (who could pay all of his creditors in full) is substantively consolidated with an insolvent debtor (who cannot make full payment to creditors), the effect of consolidation will be that the creditors of the formerly solvent debtor will receive less than full payment of their claims, while increasing the distribution to creditors of the insolvent debtor. In such a scenario, substantive consolidation has the potential to radically alter the reasonable rights and expectations of the parties.[47]

---

[45] SE Prop. Holdings, LLC v. Stewart (In re Stewart), 571 B.R. 460, 470. ("The overriding equitable consideration is that consolidation will benefit all creditors, both those of the current debtors and those to be forcibly made debtors.")
[46] *See* customer contracts, Exhibit 227.
[47] *In re Limited Gaming of Am.*, 228 B.R. 275, 286-287.

Boreworxx Construction's creditors will be severely harmed by consolidation with an insolvent debtor. These creditors will receive less than full payment of their claims in bankruptcy, while distributions to Jeff Dailey's creditors will increase. This Court should not approve of such an unfair, prejudicial result.

In recognition of the harm they would suffer if Boreworxx Construction was consolidated with the bankruptcy estate, both Commercial Capital and Oxford filed Joinders to Ms. Dailey's Motion to Vacate.[48] The Trustee now seeks to induce Commercial Capital and Oxford into filing Joinders for his Amended Motion to Consolidate and testifying in support of consolidation at his request.

The Trustee proposed a settlement with Commercial Capital and Oxford wherein he promised to allow their proofs of claim in exchange for their support of his efforts to consolidate Boreworxx Construction.[49] Of course, for Commercial Capital and Oxford, this settlement protects their interests to a certain extent if this Court grants consolidation. From a practical standpoint, what else was Commercial Capital and Oxford supposed to do? They had an operating entity with a lucrative contract in business to pay back its debt. When the trustee confiscated all of its equipment, Boreworxx Construction was effectively out of business and there was no longer any business. However, Commercial Capital and Oxford will still suffer harm from consolidation, even under the Trustee's proposed settlement. There is no guarantee that the bankruptcy estate will have sufficient funds to pay Commercial Capital and Oxford's proofs of claim, especially after payment of the Trustee's fees and other professional fees. On the other hand, if the Court vacates the Motion to Consolidate and denies the Amended Motion to Consolidate, Boreworxx Construction can resume operations and reinstate its agreements with Commercial Capital and Oxford. At the very least, Boreworxx Construction and those creditors can attempt to work out an agreement between themselves, without continued trustee meddling.

---

[48] Commercial Capital's Joinder to Motion to Vacate, Exhibit 209; Oxford's Joinder to Motion to Vacate, Exhibit 210.
[49] Motion to Settle, Exhibit 217.

Case 25-80078   Doc 895   Filed 06/08/26   Entered 06/08/26 23:38:03   Desc Main
Document     Page 15 of 20

B.  <u>Substantive consolidation is not warranted under the *Owens Corning* test.</u>

The Trustee cannot prove that substantive consolidation is appropriate under the *Owens Corning* test. The *Owens Corning* test requires the Trustee to prove either (1) prepetition the entities to be consolidated disregarded separateness so significantly their creditors relied on the breakdown of entity borders and treated them as one legal entity, or (2) postpetition their assets and liabilities are so scrambled that separating them is prohibitive and hurts all creditors.[50]

**1.  Prepetition disregard**

First, prepetition, Jeff Dailey and Boreworxx Construction did not disregard their separateness so significantly that their creditors relied on the breakdown of entity borders and treated them as one legal entity. As explained in *In re Howland*, the "prepetition disregard" section of the *Owens-Corning* test actually requires the movant to prove two elements: (1) prepetition disregard for separateness and (2) creditor reliance on the breakdown of entity borders.[51] In that case, while the movant for consolidation alleged sufficient facts to prove the entities to be consolidated disregarded their separateness, the court held that consolidation could not be granted on that basis because the movant failed to allege sufficient facts to demonstrate creditor reliance thereupon.[52]

The Trustee attempts to prove that Boreworxx Construction was an alter ego of the Debtor, and that Commercial Capital relied on the breakdown of borders between them. As demonstrated by the facts set forth in Section I(A)(1), *supra* pages 10-12, the Trustee's argument on this issue fails. The Trustee's argument hinges on the allegation that Commercial Capital considered Jeff Dailey's payment history when deciding to lend to Boreworxx Construction; this point is completely moot given that Commercial Capital

---

[50] In re Owens Corning, 419 F.3d 195, 210.

[51] *Spradlin v. Beads & Steeds Inns, LLC* (*In re Howland*), 674 Fed. Appx. 482, 489.

[52] *Spradlin v. Beads & Steeds Inns, LLC* (*In re Howland*), 674 Fed. Appx. 482, 489. ("The relevant allegations . . . fall far short of demonstrating a significant disregard of corporate separateness such that the debtors and Meadow Lake's creditors relied on the breakdown and treated them as one. Paragraph fifteen alleges that the debtors and Meadow Lake engaged in a series of transactions between themselves that flouted the corporate separateness of Meadow Lake. While this allegation may show that the debtors and Meadow Lake acted as a single entity at times, it fails to allege any reliance by creditors, a necessary component to a substantive consolidation claim based on prepetition conduct.")

was fully appraised of Cheri Dailey's ownership at the time of executing the financing agreements with Boreworxx Construction. How can the Trustee maintain that Commercial Capital relied on the lack of separateness between Jeff Dailey and Boreworxx Construction if Commercial Capital knew Boreworxx Construction was owned by Cheri Dailey at the time they executed the financing agreements?

## 2. Postpetition unscrambling

Second, postpetition, Boreworxx Construction's assets and liabilities are not so scrambled or "hopelessly commingled"[53] that separating them will hurt all creditors. Courts will consolidate based on hopeless commingling "only when separately accounting for the assets and liabilities of the distinct entities will reduce the recovery of every creditor—that is, when every creditor will benefit from the consolidation."[54]

It is the Trustee's burden to prove that Jeff Dailey and Boreworxx Construction are so hopelessly commingled that the cost of separating them would reduce every creditor's recovery. The Trustee has not alleged that the Debtor and Boreworxx Construction are hopelessly commingled, nor has he alleged that separating them would be so costly to the bankruptcy estate that it justifies consolidation. The Trustee's Amended Motion to Consolidate should be denied because he has failed to demonstrate to this Court why separating Jeff Dailey from Boreworxx Construction would be cost prohibitive. It's actually very simple to do—the only connection between Jeff Dailey and Boreworxx Construction is the faulty loan agreements with Commercial Capital and Commercial Capital has already been separated the corporate liability of Boreworxx Construction's debt.

C. <u>Substantive consolidation cannot be granted solely on alter ego grounds.</u>

The Trustee has not proven that Boreworxx Construction is an alter ego of the Debtor. However, even if the Trustee had successfully convinced the Court that Boreworxx Construction is the Debtor's alter ego—that would not be enough for the Court to grant consolidation.

---

[53] In re Castle Arch Real Estate Inv. Co., LLC, 2013 Bankr. LEXIS 532, *57 (citing *Gulfco*, 593 F.2d at 928).
[54] *Id* (citing *In re Owens Corning*, 419 F.3d at 211).

In his Motion, the Trustee relies entirely on making an argument that Boreworxx Construction is an alter ego for the Debtor.[55] The Trustee cites and relies upon the 1940 *Fish* test, which was reduced in *In re Horsley* to a two-step test: (1) the extent to which the entity to be substantively consolidated was managed or controlled by the debtor, and (2) whether the entity to be substantively consolidated had an economic existence independent from the Debtor.[56] The *Fish* test boils down to an alter ego analysis.

The Trustee does not address the Bankruptcy Court for the Western District of Oklahoma's 2017 case, *In re Stewart*, which expounds upon the *Fish* test and explains that more than alter ego must be shown for substantive consolidation to be granted. In *In re Stewart*, the Western District explained:

> It is imperative to remember . . . that substantive consolidation is not totally dependent upon an alter ego theory where the debtor has intermingled control and assets of non-debtors. The overriding equitable consideration is that consolidation will *benefit all creditors*, both those of the current debtors and those to be forcibly made debtors.[57]

The Western District went on to conclude that while the movant for consolidation succeeded in proving sufficient facts to justify veil-piercing, substantive consolidation was nevertheless inappropriate because the movant failed to show that consolidation would benefit <u>all</u> creditors.[58] The Western District has therefore made it clear that merely proving alter ego is not enough for the bankruptcy court to allow consolidation. The Trustee's argument in his Motion is flawed because it ignores this applicable, local, recent case law because he knows he cannot prove that consolidation would benefit all creditors.

---

[55] Trustee's First Amended Emergency Motion to Substantively Consolidate Boreworxx Construction, LLC with Brief in Support, ¶ 83-85, at Docket 743.

[56] *Id.*

[57] SE Prop. Holdings, LLC v. Stewart (In re Stewart), 571 B.R. 460, 470.

[58] SE Prop. Holdings, LLC v. Stewart (In re Stewart), 571 B.R. 460, 471; *see also* Helena Chem. Co. v. Circle Land & Cattle Corp. (In re Circle Land & Cattle Corp.), 213 B.R. 870, 876 (the court dismissed the movant's case for substantive consolidation for failure to state a claim because the movant merely made alter ego arguments and did not prove that consolidation would benefit all creditors).

**II. The trustee's motion to substantively consolidate Boreworxx Construction should be denied on procedural grounds.**

In addition to denying the Trustee's motion for substantive reasons set forth herein, the Court should additionally deny the Trustee's motion on procedural grounds.

A. <u>The Trustee should have pursued consolidation of Boreworxx Construction by adversary proceeding rather than by motion.</u>

Substantive consolidation of a non-debtor entity should be brought by adversary proceeding under Federal Rules of Bankruptcy Procedure 7001(a) and 7001(g).

As an equitable remedy, substantive consolidation is, by definition, an adversary proceeding under FRBP 7001(g), which states that "a proceeding to obtain an injunction or other equitable relief" is an adversary proceeding.

Substantive consolidation is also an adversary proceeding under FRBP 7001(a), which states that "a proceeding to recover money or property—except a proceeding to compel the debtor to deliver property to the trustee, a proceeding by an individual debtor to recover tangible personal property under §542(a), or a proceeding under §554(b), §725, Rule 2017, or Rule 6002" is an adversary proceeding. Note that a proceeding to recover money or property *from a nondebtor* does not fall under any of the named exceptions; so, a proceeding to recover property from a nondebtor falls squarely within FRBP 7001(a) and should be an adversary proceeding.

A recent case in the Bankruptcy Court for the Northern District of Texas demonstrates that FRBP 7001 requires consolidation over nondebtors to be pursued by adversary proceeding. In *In re Reavans Gilbert, LLC*, the court held that that "due process considerations required the Trustee's request for substantive consolidation of non-debtor entities . . . [to] be brought by an adversary proceeding under Federal Rules of Bankruptcy Procedure 7001."[59]

Presumably, the Trustee filed a simple motion to consolidate a nondebtor entity, Boreworxx Construction, because it's easier than filing an adversary proceeding. Adversary proceedings are governed

---

[59] Sherman v. Reavans Co. (In re Reavans Gilbert, LLC), 2024 Bankr. LEXIS 2775, *3-4.

Case 25-80078    Doc 895    Filed 06/08/26    Entered 06/08/26 23:38:03    Desc Main
Document    Page 19 of 20

by Part VII of the Federal Rules of Bankruptcy Procedure, which requires formal complaints, summons, discovery procedures, etc.[60] It is much easier to file a motion, fail to serve interested parties, and obtain a default order, as the Trustee in this case did, than to initiate an adversary proceeding. The Trustee's failure to file an adversary proceeding to pursue consolidation of a nondebtor entity is grounds for denying his Amended Motion to Consolidate.

**CONCLUSION**

The Trustee's Motion must be denied on substantive and procedural grounds. The Trustee's argument relies entirely on the allegation that Boreworxx Construction is an alter ego of the Debtor. Bankruptcy law requires much more than alter ego allegations to justify the "rough justice" "last resort" remedy that substantive consolidation is. Substantively consolidating Boreworxx Construction with the Debtor's bankruptcy estate would harm Boreworxx Construction's creditors by significantly reducing their recovery, and would harm the bankruptcy estate's existing creditors by reducing their recovery as well— especially if the Trustee honors his settlement agreement with Commercial Capital and Oxford by ignoring bankruptcy priority rules to satisfy their claims before all other creditors' claims. Lastly, the Trustee's motion should be denied on procedural grounds because he should have pursued consolidation of a nondebtor entity by adversary proceeding rather than my motion.

Respectfully submitted,

   /s/ Ron D. Brown                      
Ron D. Brown, OBA #16352
1609 E. 4th St.
Tulsa, Ok. 74120
(918) 585-9500 phone
(866) 552-4874 facsimile
ron@ronbrownlaw.com

---

[60] Federal Rules of Bankruptcy Procedure 7001, et seq.